IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LAURA ANNE RAPP, *et al.*

               Plaintiff,

v.

ANDREW J. LAUFERS, *et al.*,

               Defendants.

ORDER

17-cv-948-bbc

Several discovery and scheduling issues are before the court. In chronological order:

On November 19, 2018, plaintiff filed a motion for a protective order regarding her medical records. *See* dkt. 19. Defendants responded in a November 20, 2018 letter (dkt. 20) that they have no objection to the court entering a protective order providing reasonable terms for sealing the records. The court will grant plaintiff's request.

On November 21, 2018, defendants filed a motion, brief and affidavit (dkts. 21-23) seeking protection from plaintiff's discovery requests. Plaintiff responded in opposition on November 28, 2018 (dkt. 34), and defendants replied (dkt. 35) on December 5, 2018. I am granting the motion, but I am giving plaintiff a chance to attempt to obtain additional relevant evidence she might need to respond to defendants' summary judgment motion.

On November 26 & 27, 2018, defendants filed their motion for summary judgment and supporting documents. *See* dkts. 25-32. Plaintiff's response was due December 27, 2018; on December 20, 2018, plaintiff filed a motion for an extension of time (dkt. 36), asserting that defendants were behind in responding to her discovery requests, and asking for permission to serve 25 additional interrogatories on defendants. Defendants responded in partial opposition on December 21, 2018. *See* dkt. 36. As foreshadowed in the previous paragraph, I will give plaintiff additional time to respond to the pending summary judgment motion, and I will allow her the opportunity to serve some additional discovery requests on defendants. This will require striking the May 20, 2019 trial date, but that will end up being more efficient for everybody.

**Procedural Background**

On December 25, 2018, plaintiff, who currently lives in California, filed this law suit pro se, both on her own behalf and in her capacity as the former personal representative of the Laurence A. Berg Estate. This is a legal malpractice action: plaintiff claims that the defendants, all lawyers in a Minnesota law firm, botched the 2012 settlement agreement following a plane crash in Menomonie, Wisconsin (within this judicial district) in which Laurence Berg (plaintiff's brother) and two other people died. *See* dkt. 1. Defendants answered on January 26, 2018 (dkt. 4), and on March 15, 2018, the court held a telephonic preliminary pretrial conference with plaintiff and the defendants' attorney. At the hearing, the court set all the dates, including expert disclosure deadlines, a dispositive motion filing deadline, a discovery cutoff, and a trial date. All of these dates are commemorated in the March 22, 2018 preliminary pretrial conference order (dkt. 8), which the court has formatted for use in pro se civil lawsuits in order to make the order more understandable and informative for non-lawyers.

In the section of the order explaining discovery (dkt. 8 at 6-8), the court pointed plaintiff toward F.Rs. Civ. Pro. 26 -37 & 45, directed plaintiff to read those rules right away so that she would understand how discovery worked, and warned that the parties had no right to get information or documents except in the ways provided for in the rules. In the order, the court warned the parties that if they had discovery disputes, they should work them out quickly if they were able; if they could not work them out, then either the plaintiff or the defendants should quickly file a motion with the court because "if the parties do not bring discovery problems to the court's attention quickly, then the cannot complain that they ran out of time to get information that they needed for summary judgment or for trial." *Id.* at 8.

By pro se lawsuit standards, the next few months were relatively uneventful on the docket. In November, defendants asked for a short extension of the summary judgment motion deadline

because plaintiff had requested 30 days to review the transcript of her October 18, 2018 deposition. (Dkt. 16) The court granted that request and moved the filing deadline to November 26, 2018.

**Docket 19: Plaintiff's Motion for a Protective Order**

Pursuant to F.R. Civ. Pro. 5.2, plaintiff seeks a protective order that will retain the confidentiality of any medical records filed by either side in this lawsuit. Defendants do not oppose this request. The court is granting plaintiff's request, as reflected in the order section below. As anticipated by Rule 5.2(d), this court requires a party to file two versions of a document that contains protected information: an unredacted version that will be filed and retained under seal, along with a redacted version that will be available in the public section of the case file.

**Dkt. 21: Defendants' Motion for Protection from Discovery**

Defendants report that plaintiff has served 362 requests for admission (RFAs), along with a second round of interrogatories and request for production of documents. Defendants ask the court to strike all of this discovery as cumulative, unduly burdensome and harassing. *See* dkt. 22 at 2. Defendants have submitted a copy of some of the challenged discovery. *See* dkt. 23-1.

In response, plaintiff asserts that defendants chose not to attempt to resolve their discovery concerns with her before filing their motion, and that they have not provided any details showing how plaintiff's discovery requests are burdensome, which is their obligation. Plaintiff also disputes defendants' contention that depositions would be an easier way to adduce the information sought in her RFAs, pointing out the geographic, economic and energy challenges depositions would pose. Plaintiff defends her request for follow-up interrogatories by claiming that defendants were evasive and uninformative in their answers to her first set of interrogatories. Plaintiff also accuses defendants and their attorneys of gaming the schedule and taking advantage of her pro se status by filing their motion for protection when they did, just prior to filing their motion for summary judgment.

Defendants reply that an objective review of both sides' discovery practices will show that defendants have been measured in their requests for discovery, contrasted with plaintiff's disproportionate and vexatious discovery requests. So, the lines are drawn.

Let's start with the RFAs. 362 RFAs is just too many. This is not obvious from Rule 36 itself; indeed, RFAs would seem to be a simple, economical method to prove up one's case, particularly since the rule imposes no numerical limit like those found in Rule 30 (a presumptive limit of 10 depositions) and Rule 33 (a presumptive limit of 25 interrogatories). This has been plaintiff's approach in the instant lawsuit: in her RFAs in dkt. 23-1, plaintiff appears to have set forth sequentially many–most?– of the material facts that she would like to present to the jury at trial and she has asked the defendants to admit to them. Pursuant to Rule 36(b) this would make these facts conclusively established in this lawsuit. The court cannot fault a pro se plaintiff for approaching discovery in this fashion, particularly where, as here, plaintiff is located in California, the defendants are in Minnesota and the court is in Wisconsin.

But, as explained in the Advisory Committee Notes to Rule 36 (particularly regarding the 1970 amendments to the rule), and in the cases cited by the parties in their briefs to this court, RFAs rarely work out as smoothly in practice as might seem to be the case in theory. Starting with the 1970 Advisory Committee Note to Subdivision (a), RFAs that require admission of matters of opinion or the application of law to fact often are disputed, and therefore require the disputing parties to deny the RFA and also to state in detail why they cannot truthfully admit or deny it. "Requests to admit may be so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome. If so, the responding party may obtain a protective order under rule 26©"

That's because in reality, RFAs are only useful to put to one side any innocuous, inarguable facts so that the parties can focus on exploring unknown, nuanced or disputed issues through types of discovery better suited for adducing such information. As such, RFAs don't actually constitute

4

discovery, they are closer to stipulations, and like stipulations, the best path to having both sides sign off on them is to keep the requests factually precise and objectively neutral.

Having refereed countless disputes over RFAs in federal civil lawsuits, this court's view of RFAs mirrors that articulated by Judge Marsh over 50 years ago:

> [I]t is generally held that a request for admissions may not be applied to a controverted legal issue lying at the heart of the case, and it should be phrased so that it can be clearly admitted or denied without explanation. Requests which call for interpretation of documents, letters, communications, statutes, and requests for opinions, conclusions of law, conjectures, or suspicions are objectionable.
>
> *Pittsburgh Hotels Ass'n v. Urban Redev. Auth. Of Pittsburgh*, 29 F.R.D. 512, 513 (W.D. Pa. 1962), footnotes omitted.

In that case, the court found 19 of plaintiff's 34 RFAs to be substantively objectionable.

More recently, Judge Rowland in the Northern District of Illinois struck defendant's 460 RFAs and the ten associated interrogatories on similar grounds, also factoring in the heavy burden imposed by responding:

> Requests to admit should not be excessive in number and, obviously, should be tailored in a manner and scope to avoid harassment and improper motive. . . . Under Rule 36, requests for admission should be simple and direct so that they can be readily admitted or denied. Properly used, requests to admit serve the expedient purpose of eliminating the necessity of proving essentially undisputed issues of fact. They are intended to save time and expense by narrowing the issues to be tried. Rule 36 should not be used unless the statement of fact sought to be admitted is phrased so that it can be admitted or denied without explanation. Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable and oppressive.
>
> These basic principles persuade the Court that the . . . plaintiffs should be excused from answering the requests to admit and associated interrogatories. First, the requests cannot be readily admitted or denied. Instead, to the extent that the requests are capable of an answer, the opt-in plaintiffs would likely need to qualify each answer with detail. [R]equests to admit should be capable of being admitted or denied without explanation. Defendant's decision to incorporate all 460 requests into its interrogatories numbers 4 through 13 confirms that Defendant knows its requests are not

> readily admitted or denied and suggests that Defendant is using the requests to circumvent the number of interrogatories allowed by rule 33. . . . Nor are the requests designed to identify and eliminate those matters on which the parties agree. On the contrary and as Defendant readily acknowledges, the requests seek information related to the fundamental disagreement of this lawsuit . . ..
>
> *Tamas v. Family Video Movie Club, Inc.*, 302 F.R.D. 346, 347 (N.D. Ill. 2014), citations and quotations omitted.

Against this template, plaintiff's RFAs and the related interrogatories are improper. The court does not attribute improper motive to plaintiff; she's not a lawyer, she's never done this before, she's got limited resources and she faces geographic challenges, so serving a lot of RFAs seemed like a good idea. To the extent that the RFAs are vexatious and harassing in their effect, the court does not believe that this was plaintiff's intent. But this doesn't change the outcome: the court is going to strike plaintiff's entire set of RFAs.

Two observations: First, there are a few RFAs in the mix that are appropriate and which plaintiff could re-pose if she wishes. The court is not going to sort through the RFAs to point out which ones it deems acceptable amidst the hundreds that defendants properly have challenged. But I will provide plaintiff a brief opportunity to serve a significantly smaller revised set of RFAs on defendants. If she chooses this option (set forth below) plaintiff must be careful to craft each RFA to be factually narrow and objectively indisputable.

Second, although plaintiff defends her RFAs on the ground that she merely is seeking relevant information to use in opposing defendants' summary judgment motion and to use at trial, as noted above, RFAs are not actually a discovery tool. To the extent that plaintiff already has personal knowledge of events, documents and conversations that were the subject of her RFAs, she may offer her own affidavit, defendants' own statements to her and her own copies of the authenticated documents into the record, subject to the Federal Rules of Evidence. In other words, this ruling quashing plaintiff's RFAs will not, by itself, hamstring plaintiff's ability to generate and submit evidence in opposition to defendants' pending summary judgment motion.

6

This segues to plaintiff's complaint that she probably would not have needed to prepare and serve all of her RFAs if the defendants had been complete and thorough when responding to her interrogatories and requests for supporting documents. Even if this is true, it's an apples-to-oranges comparison at this juncture. Plaintiff could have filed a motion to compel discovery from defendants and could have attempted to establish that the defendants have not met their disclosure obligations. But she didn't. Instead, she served new RFAs and a second set of interrogatories and requests for production. Obviously, that hasn't worked.

But the court is willing to provide Rapp with a brief opportunity to adduce additional discovery that she genuinely needs to respond adequately to defendants' pending summary judgment motion. More on this in the next section.

Defendants point out in their reply that discovery is not a cost-free proposition. Although they proclaim their willingness to provide good faith, best effort responses to plaintiff's non-duplicative, relevant discovery requests, they ask to be spared from expensive, repetitive irrelevant discovery requests. That's a fair request, which is why the court is striking all of plaintiff's pending discovery at this time. But the court is giving plaintiff a partial mulligan: it is granting in part her final pending motion.

**Docket 36: Plaintiff's Motion for an Extension and for More Discovery**

As noted at the outset, defendants filed their motion for summary judgment on November 27, 2018. Plaintiff's response was due December 27, 2018. On December 20, 2018, plaintiff filed a motion for an extension of time (dkt. 36), asserting that defendants were behind in responding to her discovery requests, and asking for permission to serve 25 additional interrogatories on defendants. Defendants responded that they don't oppose an extension, but they oppose having to provide any additional discovery. *See* dkt. 36.

In support of her motion, plaintiff briefly references the substance and timing of the discovery disputes that led to the defendants' motion for protection, which I just granted. As noted above,

7

because plaintiff is pro se and lives thousands of miles away, I am giving her another chance to attempt to adduce additional relevant information and I am giving her the time to do so.

Not later than January 14, 2019, plaintiff may seek additional evidence in this fashion:

(1) She may file a motion to compel more complete responses to her first set of interrogatories and requests for production of documents; if she files a motion to compel, then she may not file any new RFAs or interrogatories. Defendants' response to a motion to compel would be due seven days after the motion is filed. **OR**

(2) Defendant may eschew a motion to compel in favor of:

    (A) 24 proper RFAs and no new interrogatories; OR

    (B) 12 proper RFAs and five new interrogatories; OR

    [C} Ten new interrogatories and no RFAs.

To the extent that an interrogatory genuinely implicates the production of supporting documents, plaintiff may request those documents and defendants must provide them.

Any defense motion for protection from new discovery must be filed not later than seven days after the discovery is served. Defendants' complete responses to unchallenged new discovery responses are due not later than 30 days after service of the requests.

Plaintiff's deadline to respond to defendants' pending summary judgment motion is due February 28, 2019. The court does not intend to extend this deadline again. Defendants' reply deadline is March 11, 2019.

Because this puts defendants' motion under advisal less than three months before the May 20, 2019 trial date, the remainder of the existing schedule is struck. The court will reset the schedule if necessary after ruling on defendants' motion for summary judgment.

ORDER

It is ORDERED that:

(1) Plaintiff's motion for a order protecting confidential medical information (dkt. 19) is GRANTED. The parties must file confidential medical/psychological information under seal, to be viewed only by the parties to this case and court staff. All sealed documents must be accompanied by a redacted version that will be publically accessible in the court record.

(2) Defendants' motion for protection for discovery (dkt. 21) is GRANTED. Plaintiff's requests for admission, second interrogatories and requests for production are STRUCK.

(3) Plaintiffs' motion for additional time (dkt. 36) is GRANTED in the manner set forth above.

(4) The remainder of the existing schedule is STRUCK. The court will reset the schedule if necessary after ruling on defendants' motion for summary judgment.

Entered this 7th day of January, 2019.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge