IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAURA ANNE RAPP,

                                          OPINION AND ORDER

        Plaintiff,

                                          17-cv-948-bbc

    v.

ANDREW J. LAUFERS, KATHERINE
BROWN HOLMEN and DUDLEY
AND SMITH, PA,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Laura Anne Rapp is proceeding on legal malpractice and misrepresentation claims against defendants Andrew Laufers and Katherine Brown Holmen and a negligent supervision claim against defendant Dudley and Smith, PA regarding representation that defendants provided to plaintiff in her capacity as personal representative for her brother's estate following his death in a plane crash. Before the court are two motions filed by defendants: (1) a motion for summary judgment as to all of plaintiff's claims, dkt. #24; and (2) a motion to strike three third-party affidavits submitted by plaintiff, dkt. #55, on the ground that they include opinion testimony from expert witnesses not disclosed in accordance with Federal Rule of Civil Procedure 26(a)(2). Before I ruled on the motions, defendant Laufers filed notice that he had filed a chapter 13 bankruptcy petition. In an order entered on July 10, 2019, I stayed plaintiff's claims against Laufers under 11 U.S.C. § 362, pending the completion of the bankruptcy proceedings. Dkt. #65. Defendants Holmen and Dudley and Smith have informed the court that they do not object to the case proceeding as to the claims against them. Dkt. #66.

1

For the reasons below, I am granting in part and denying in part the motion to strike the third-party affidavits, granting the motion for summary judgment as to plaintiff's claims against defendants Holmen and Dudley and Smith and staying a ruling on the motion for summary judgment as to the claims against defendant Laufers. There is no reason to delay entry of judgment as to defendants Holmen and Dudley and Smith, so I will direct the clerk of court to enter judgment in their favor. Fed. R. Civ. P. 54(b) ("[C]ourt may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."). Because plaintiff's remaining claims against defendant Laufers are stayed pending the completion of bankruptcy proceedings, I will dismiss the case against him without prejudice, subject to being reopened upon the completion of bankruptcy proceedings. I will direct defendant Laufers to provide the court and plaintiff updates every six months regarding the status of the bankruptcy proceedings, beginning on March 26, 2020.

PRELIMINARY EVIDENTIARY MATTERS

A. <u>Parties' Proposed Findings of Fact</u>

Although plaintiff responded to defendants' proposed findings of fact, she failed to file a separate document proposing any findings of fact to support her claims and defeat defendants' motion for summary judgment. Pretr. Conf. Ord., dkt. #8, at 15-17 (explaining this court's procedures with respect to opposing motion for summary judgment). Instead, plaintiff filed a lengthy affidavit and a 171-page brief in which she makes hundreds of factual

2

assertions with more than 400 footnote citations, several of which do not support the assertions made in her brief. Plaintiff's "exhibits" are contained in one document totaling more than 800 pages. This practice places an undue burden on defendants and the court and violates the court's summary judgment procedures, which direct parties that "[a]ll facts necessary to sustain a party's position on a motion for summary judgment must be explicitly proposed as findings of fact" Id. at 12. "The court will not search the record for factual evidence. Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion. Your brief is the place to make your legal argument, not to restate the facts." Id. In light of plaintiff's pro se status, I have considered her factual assertions to the extent that they relate to her claims, do not merely reflect plaintiff's opinion and are fairly supported by evidence that I could readily identify in the record.

Plaintiff also responded to some of defendants' proposed findings of fact with an argument or a statement of her own conclusory opinion without citing any admissible evidence in support of her contention. This practice violates the court's summary judgment procedures, which direct parties that "[e]ach fact proposed in disputing a moving party's proposed factual statement . . . must be supported by admissible evidence. The court will not . . . consider any factual propositions made in response to the moving party's proposed facts that are not supported properly and sufficiently by admissible evidence." Pretr. Conf. Ord., dkt. #8, at 18. Therefore, I have considered plaintiff's responses to defendants'

3

proposed findings of fact only to the extent that they are clearly and obviously supported by citations to admissible evidence. Further, in accordance with this court's summary judgment procedures, I have considered as undisputed any fact proposed by defendants that plaintiff failed to put into dispute with admissible evidence. Id. at 17.

B. Motion to Strike Expert Testimony

On March 1, 2019, in response to defendants' motion for summary judgment, plaintiff filed the affidavits of Attorney M. Keith Branyon, Attorney Susan Bullard and Cathy Gille, C.P.A., all of whom are fact witnesses but also offer professional opinions about defendants' legal representation of plaintiff. Defendants have moved to strike the affidavits and ask that the witnesses not be permitted to testify as experts at trial on the ground that plaintiff failed to timely disclose them as experts by October 1, 2018, as required by Federal Rule of Civil Procedure 26(a)(2) and the court's preliminary pretrial conference order. Dkt. #8 at 3 ("If a party does not follow the requirements of Rule 26(a)(2) by his (or her) deadline to disclose expert witnesses, then this court will not allow that expert witness to present evidence in this case.").

In response, plaintiff points out that Branyon, Bullard and Gille all represented her brother's estate at some time and have personal knowledge of some of the events relevant to her lawsuit. She argues that as a pro se litigant, she was not aware that she had to designate these type of fact witnesses as experts in order for them to provide their observations and opinions and did not know what testimony would be needed to oppose

defendants' motion for summary judgment. However, the preliminary pretrial conference order made clear that all expert opinions must be disclosed *before* the filing and briefing of dispositive motions such as a motion for summary judgment, and that professional witnesses such as physicians or nurses must be named as experts by the deadline, even if they will be offering only opinion evidence about what they did or believed at the time of the events in question. Dkt. #8 at 3. See also Fed. R. Civ. P. 26(a)(2)(C) (requiring at least disclosure of subject matter and summary of facts and opinions to which expert will testify). Although plaintiff suggests that I extend the discovery period and allow defendants to depose Branyon, Bullard and Gille, it is too late in the case for that to make a difference.

Accordingly, I will grant defendants' motion to strike to the extent that I will not consider the improperly disclosed expert opinions of Branyon, dkt. #42 at 2-3, Bullard, dkt. #43 at ¶¶4 and 19, and Gille, dkt. #41 at ¶¶18, 21-25. These individuals also will not be permitted to offer expert testimony at any future trial in this case. However, defendants' motion is denied to the extent that Branyon, Bullard and Gille may testify as fact witnesses about any relevant events about which they have personal knowledge. They may not offer any opinion testimony about what defendants should or could have done during their representation of plaintiff.

From defendants' proposed findings of fact and plaintiff's responses, I find the following facts to be material and undisputed unless otherwise noted.

5

UNDISPUTED FACTS

Plaintiff Laura Rapp is a citizen of California and is the personal representative for the estate of her deceased brother, Laurence Berg. Defendants Andrew Laufers and Katherine Brown Holmen are attorneys who worked with defendant Dudley and Smith, PA, a law firm in St. Paul, Minnesota, during the events at issue in this case. This lawsuit relates to defendants' legal representation of plaintiff as the personal representative of the Berg estate, which was subject to probate proceedings in the Circuit Court for St. Croix County, Wisconsin.

On January 30, 2009, Laurence Berg, his wife Vicki Garves-Berg and their friend Brett Weller died in a plane crash in Menomonie, Wisconsin. Berg was the pilot of the small aircraft. (Plaintiff attempts to dispute this fact, but she presents no evidence in support of her contention apart from saying that Berg's involvement in piloting the plane was never proven in a court of law.) In the summer 2009, relatives of Garves-Berg and Weller filed wrongful death claims against the Berg estate. (The parties do not explain or provide any further detail about what they mean by "claims," but a wrongful death lawsuit was never filed.) On September 30, 2009, the National Transportation Safety Board released a report indicating that pilot error was the probable cause of the crash. Although Berg's father, James Berg, initially served as the personal representative of Berg's estate, plaintiff became the personal representative before November 10, 2009.

In early May 2010, plaintiff contacted defendant Holmen by telephone to discuss the wrongful death claims filed against her brother's estate. Although plaintiff contacted

Holmen solely for the purpose of finding a litigation attorney, she also asked Holmen whether anyone in the firm handled probate matters. Plaintiff later set up an in-person meeting with another attorney at the Dudley firm, defendant Laufers, who had 13 years of experience working on estate planning matters, including probate. Plaintiff agreed to retain the Dudley firm. On May 28, 2010, Laufers filed an appearance as plaintiff's attorney in St. Croix County case no. 09-PR-38, the Berg estate probate case.

Although Holmen was plaintiff's original contact at the law firm, she performed very little work for the Berg estate and never met plaintiff in person. Plaintiff does not recall having any communication with Holmen after August 2010. Holmen believes that she may have reviewed an AXA Insurance liability policy and may have seen a proposed settlement agreement as to that policy in late summer 2011, but she did not otherwise perform any substantive work for the Berg estate after August 2011. Holmen did not bill any work to the estate after January 2011. (Plaintiff says that Holmen must have done more work for the estate because Holmen and Laufers "worked as a team," but apart from her own speculation, she presents no evidence about any specific work that Holmen performed.) In a November 4, 2011 email, Laufers referred to Holmen having reviewed a "policy." (The parties do not propose any factual findings about whether the email stated when Holmen reviewed the policy or what it was. However, defendants do not dispute for purposes of summary judgment that Holmen may have performed work between August and November 4, 2011.)

Plaintiff understood that Holmen was going to speak with AXA Insurance about the wrongful death claims, but plaintiff does not remember having a discussion with Holmen

about the possibility of filing a product liability suit against the plane manufacturer. The National Transportation Safety Board did not report any mechanical problems with the plane, and a product liability lawsuit was never filed. (Holmen avers in her declaration that she briefly considered a products liability claim but dismissed the idea immediately because the need for expert witnesses would have been cost prohibitive and there was no evidence to support such a claim, particularly in light of the safety board's report. Plaintiff says that Holmen did not tell her this.)

In the later half of 2011, defendant Laufers, the attorney representing the Weller estate and AXA Insurance reached a proposed settlement agreement in which AXA would pay the $103,000 policy limit to the Weller estate and credit the Berg estate in the same amount. (It appears that a similar agreement was not reached with the Garves-Berg estate because the insurance company did not allow for a payout to Berg's wife under the circumstances. The parties do not say whether the Berg estate reached any alternative settlement with the Garves-Berg estate regarding the wrongful death claim, but there is no evidence that a wrongful death lawsuit was ever filed against the Berg estate.)

In an email dated August 3, 2011, plaintiff told Laufers that she had retained an accountant to prepare the fiduciary tax return for the Berg estate. On October 11, 2011, the Internal Revenue Service filed a Notice of Federal Tax Lien against the Berg estate for 2009 fiduciary taxes due in the amount of $50,545.87, including interest and penalties.

On December 5, 2011, the Circuit Court for St. Croix County ordered anyone who may have an interest in or against the Berg estate to participate in mediation. Prior to the

mediation, the circuit court also ruled that approximately $240,000 in life insurance proceeds and 401(k) funds that James Berg inherited from his son Laurence as non-testamentary assets should be made available to pay the debts of the Berg estate. That ruling was later overturned on appeal. (The parties do not say who filed the appeal.)

The court-ordered mediation took place on January 9, 2012. Plaintiff, Laufers and representatives from the Garves-Berg and Weller estates, AXA insurance and the Wisconsin Department of Revenue attended the mediation. The general counsel for the Internal Revenue Service in Wisconsin appeared by telephone. Holmen did not participate in the mediation. On January 10, plaintiff signed a settlement agreement that resolved the Weller estate's wrongful death claim and some of Berg's and Garves-Berg's outstanding state and federal tax liabilities: the Berg estate would pay $200,000 and the Garves-Berg estate would pay $70,000 toward the outstanding tax liability, the Wisconsin Department of Revenue agreed to accept $64,179 from the Berg and Garves-Berg estates to settle its claims and the Internal Revenue Service agreed to accept $161,567.24 from the Berg estate toward its share of the claim for back taxes. (Although plaintiff says the settlement agreement she signed did not contain the terms related to the Internal revenue Service, she fails to cite any admissible evidence in support of her contention.) James Berg agreed to contribute $120,000 out of the $240,000 ordered by the court toward the settlement, but he never did so.

At the time of the mediation, Laufers believed that the settlement reached with the Internal Revenue Service included all of the estate's outstanding tax liabilities, including the 2009 fiduciary taxes. However, at that time, plaintiff had not yet filed all of the fiduciary

9

income tax returns for the estate.

Within days of signing the settlement agreement, plaintiff became concerned with additional mediation and attorney fees and whether there would be enough funds remaining in the estate account to cover her estate administration costs. As the personal representative, she was entitled a to fee in the amount of two percent of the net value of the estate. After paying the Internal Revenue Service, the Dudley firm, the mediator and the accountant, the Berg estate was left with $51,245 in cash. (Plaintiff did not pay the Wisconsin Department of Revenue.)

Because plaintiff asked Laufers to object to the enforcement of the settlement agreement, Laufers emailed the attorney for the Garves-Berg estate and drafted a letter to the court. On January 23, 2012, the Garves-Berg estate moved the circuit court to approve the settlement agreement. On February 2, 2012, plaintiff told defendant Laufers that she did not want him to represent the Berg estate any longer, and Laufers filed a motion with the state court to withdraw his representation. At a hearing on February 7, 2012, the court granted Laufers's motion, and Attorney Bullard entered her appearance as plaintiff's attorney. (Bullard continued to represent plaintiff in the probate matter until plaintiff resigned as the personal representative of the Berg estate in 2015.)

On April 30, 2012, the Internal Revenue Service notified the Berg estate that it was still owed more than $50,000 in back fiduciary taxes, interest and penalties from 2009. The Internal Revenue Service took the position that this amount was not a part of the mediated settlement agreement.

Over plaintiff's continued objections, the circuit court granted the motion to enforce the settlement on May 11, 2012 and denied plaintiff's motions for reconsideration on August 13, 2012. Attorney Bullard did not file an appeal on behalf of the Berg estate with respect to the court's order approving the settlement. (Defendants have proposed additional findings of fact regarding subsequent events and payments made by the Berg estate, but they are not material to the claims against defendants Holmen and Dudley and Smith.)

Plaintiff filed her lawsuit in this court on December 27, 2017.

OPINION

A. Legal Standard

Summary judgment is appropriate only if the moving party (in this case defendants) can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Defendants bear the burden of establishing that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against them. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970). See also Lawrence v. Kenosha County, 391 F.3d 837, 841 (7th Cir. 2004).

Defendants are entitled to judgment as a matter of law where plaintiff has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

11

immaterial." Id. "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." Grant v. Trustees of Indiana University, 870 F.3d 562, 568 (7th Cir. 2017). Although a court may "point a pro se litigant toward the correct procedure or 'take appropriate measures to permit the adjudication of pro se claims on the merits," it "is not to become an advocate," seek out "legal 'issues lurking within the confines' of the pro se litigant's pleadings" or decide "unraised issues." Kiebala v. Boris, 928 F.3d 680, 684-85 (7th Cir. 2019) (internal citations omitted).

## B. Defendant Holmen

Plaintiff generally asserts that defendant Holmen is liable for legal malpractice, breach of the standard of care, breach of contract, breach of fiduciary duty, negligence and misrepresentation. However, as discussed further below, plaintiff's specific allegations relate primarily to misrepresentation and malpractice.

The parties do not dispute that plaintiff's claims are governed by Wisconsin law. At the time of the events at issue in this lawsuit, plaintiff was required to bring claims of legal malpractice, negligence, breach of contract and misrepresentation within six years of the date on which she discovered her injury or should have discovered her injury with reasonable diligence. Wis. Stat. § 893.43 (vers. eff. to Feb. 6, 2016), § 893.53 (vers. eff. to Apr. 4, 2018); Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI 22, ¶ 16, 308 Wis. 2d 103,

116, 746 N.W.2d 762, 768-69. (Some of the other torts that plaintiff mentions have shorter statutes of limitations, but defendants have not discussed them, so I will not address them.)

1. Misrepresentation

Plaintiff contends that on May 6, 2010, Holmen (1) falsely told plaintiff that she needed to hire both a litigation and a probate attorney from the Dudley firm; (2) recommended Laufers as an experienced probate attorney, even though Laufers had not previously handled an estate or probate matter in Wisconsin; (3) did not disclose that she was not licensed to practice law in Wisconsin; and (4) did not disclose that she would provide legal services only in the event that a wrongful death lawsuit proceeded against the estate. Plaintiff has not proposed any findings of fact with respect to these allegations and provides very little detail in her brief about Holmen's alleged misrepresentations. As defendants point out, any alleged misrepresentation made on May 6, 2010 falls outside the six-year statute of limitations period. Although plaintiff generally suggests in her response brief that Holmen continued to mislead her in later conversations, plaintiff fails to identify any such conversations that occurred within the six-year statute of limitations period. In fact, the undisputed facts show that plaintiff did not speak with Holmen after May 6, 2010, and Holmen did not perform (or bill) any work for the Berg estate after November 4, 2011, at the latest. Accordingly, to the extent that plaintiff's misrepresentation claims are based on statements that Holmen made in May 2010, those claims must be dismissed as barred

by the statute of limitations.

Plaintiff seems to argue that the statute of limitations period did not start running with respect to Holmen's alleged misrepresentation about Laufers's experience (claim no. 2) until plaintiff "discovered" his incompetence or malpractice in January 2012, when she reviewed the settlement agreement and sought to prevent its enforcement. Even if this is true, plaintiff has failed to show that Holmen's general statement about Laufers being an "experienced" probate attorney was untrue or had anything to do with the quality of work he later provided to plaintiff.

To prove her negligent misrepresentation claim, plaintiff must show that: (1) Holmen made a factual representation; (2) the representation was untrue; (3) Holmen was negligent in making the misrepresentation; and (4) plaintiff believed the statement to be true and relied on it to her detriment. Malzewski v. Rapkin, 2006 WI App 183, 296 Wis. 2d 98, 723 N.W.2d 156. The elements of a claim for intentional misrepresentation are similar, except that plaintiff also must show that Holmen knew the representation was untrue or made it recklessly without caring whether it was true or false and made the representation with the intent to deceive plaintiff and induce her to act. John Doe I v. Archdiocese of Milwaukee, 2007 WI 95, ¶ 38, 303 Wis. 2d 34, 734 N.W.2d 827.

In support of her misrepresentation claim, plaintiff cites the opinion of her expert witness, Attorney Cade, who says that Laufers's inexperience was shown by his not having previously handled a probate matter in Wisconsin and by his allegedly using a Minnesota form for filing an objection to the Berg estate's probate claims. Plaintiff has not provided

any evidence to support the facts on which Cade based his opinion, but even if she had, a reasonable jury would not conclude from this evidence alone that Laufers was not "experienced." In fact, the undisputed facts show that Laufers had more than a decade of estate planning experience. Moreover, any general statement that Holmen may have made about Laufers's experience is not a "fact" and is more appropriately classified as opinion or "puffery," upon which the law says that plaintiff has no right to rely. Loula v. Snap-On Tools Corp., 175 Wis. 2d 50, 54, 498 N.W.2d 866 (Ct. App. 1993) ("'Puffing' is an expression referring to an exaggeration made by a seller, the truth or falsity of which cannot be precisely determined, and is not actionable as a misrepresentation of fact.").

2. Malpractice

With respect to malpractice, plaintiff contends that Holmen should have (1) investigated a product liability claim against the airplane manufacturer and (2) defended the Berg estate against personal injury (or wrongful death) claims. As discussed above, the undisputed facts show that Holmen last provided work for the Berg estate in November 2011, at the latest. Therefore, the statute of limitations has run on any malpractice claim involving activity before December 27, 2011. Although plaintiff argues that Holmen remained her attorney and had a responsibility to provide personal injury defense services at least until plaintiff terminated her relationship with Laufers on February 2, 2012, she has failed to present any evidence showing what Holmen did or failed to do with respect to either a potential product liability claim or the defense of the wrongful death claims that

15

resulted in any injury to the estate.

To prevail on a legal malpractice claim under either Wisconsin tort or contract law, plaintiff must show that: (1) defendant had a lawyer-client relationship with plaintiff; (2) defendant committed acts or omissions constituting negligence; and (3) the alleged negligence caused plaintiff injury. Lewandowski v. Continental Casualty Co., 88 Wis.2d 271, 276 N.W.2d 284, 287 (1979); Tallmadge v. Boyle, 2007 WI App 47, ¶ 15, 300 Wis. 2d 510, 730 N.W.2d 173. To establish causation and damages in a legal malpractice action, a plaintiff must prove that "but for" the attorney's negligence, the plaintiff would have prevailed on the underlying litigation. Talmage v. Harris, 354 F. Supp. 2d 860, 864-65 (W.D. Wis. 2005) (citing Harris v. Bowe, 178 Wis.2d 862, 868, 505 N.W.2d 159 (Ct. App. 1993)). Practically speaking, this requires the plaintiff to prove a case-within-a-case, that is, that she would have prevailed on the merits of the underlying litigation. Id. (citing Lewandowski, 88 Wis.2d at 277, 276 N.W.2d at 287).

In support of her argument, plaintiff cites Attorney Cade's expert opinion that the law firm should have investigated a possible product liability suit, but Cade offers no opinion about what Holmen may have missed or the potential success of such a suit. In fact, it is undisputed that the National Transportation Safety Board concluded that the crash was probably due to pilot error and reported no mechanical problems with the plane. With respect to personal injury defense, the undisputed facts show that the wrongful death claims were settled by AXA Insurance with no financial loss to the Berg estate and that no wrongful death lawsuit was ever filed. Without more, a reasonable jury would not conclude that

Holmen committed any act of negligence that resulted in a tangible injury to the estate. Therefore, defendant Holmen is entitled to summary judgment with respect to plaintiff's malpractice claims against her.

C.  Defendant Dudley and Smith, PA

Plaintiff contends that the Dudley firm is liable for negligent supervision of defendant Laufers. To prevail on a negligent supervision claim, plaintiff must show that the law firm knew or should have known that its employee would subject a third party to an unreasonable risk of harm. L.L.N. v. Clauder, 209 Wis. 2d 674, ¶ 36, 563 N.W.2d 434 (1997).

In support of her claim, plaintiff cites the opinion of her expert witness that "no one was watching over Laufer[s]'s shoulder or guiding him." Dkt. 46-1 at 6. However, liability for negligent supervision results not because of the relationship between the parties but because the employer "antecedently had reason to believe" that an undue risk of harm would exist because of the employment. Id. (quoting cmt. d, Restatement (Second) of Agency § 213 (1957)); John Doe 1 v. Archdiocese of Milwaukee, 2007 WI 95, ¶ 33, 303 Wis. 2d 34, 58, 734 N.W.2d 827, 838 (claim for negligent supervision is not claim based on vicarious liability). Apart from pointing out that Laufers had not handled a probate matter in Wisconsin and used a Minnesota state form that caused no tangible harm to her case, plaintiff has failed to present any evidence that the Dudley firm was aware of a risk of harm that would have been apparent from allowing Laufers to handle the estate's probate case. Given that Laufers had at least thirteen years of experience in estate law, a reasonable jury

17

would not conclude that the Dudley firm was negligent for not monitoring Laufers's work more closely. Even though plaintiff says that she complained to the Dudley firm about Laufers at the time she terminated her retainer agreement with the firm, those complaints would have come after Laufers was no longer working on the case. L.L.N., 209 Wis. 2d 674, ¶ 36. Accordingly, the firm of Dudley and Smith, P.A., is entitled to summary judgment with respect to plaintiff's negligent supervision claim.

ORDER

IT IS ORDERED that

1. The motion filed by defendants Andrew Laufers, Katherine Brown Holmen and Dudley and Smith, PA to strike the affidavits of M. Keith Branyon, Susan Bullard and Cathy Gille, dkt. #55, is GRANTED as to the witnesses' allegedly improperly disclosed expert opinions. The motion is DENIED as to any facts about which these witnesses have personal knowledge.

2. Defendants' motion for summary judgment, dkt. #24, is GRANTED as to the claims against defendants Holmen and Dudley and Smith and STAYED as to the claims against defendant Laufers, pending the resolution of his bankruptcy proceedings.

3. The clerk of court is directed to enter judgment in favor of defendants Holmen and Dudley and Smith in accordance with Fed. R. Civ. P. 54(b).

4. This case is DISMISSED without prejudice on the following conditions: (a) any party may file a motion to reopen this case within a reasonable time after the completion of

the bankruptcy proceedings involving defendant Laufers; and (b) defendant Laufers shall provide the court and plaintiff updates every six months regarding the status of the bankruptcy proceedings, beginning on March 26, 2020.

Entered this 26th day of September, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge